IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARITA ANDERSON, MONTRELL HARDY, ALMA LYLES and MALCOLM THOMPSON, )<br>)<br>)<br>) | |
| Plaintiffs, ) | No. 07 C 1378 |
| )<br>v. ) | Judge Ronald A. Guzmán |
| )<br>CITY OF CHICAGO, and CHICAGO POLICE OFFICERS D. SHEEHAN, and B. YOSHIKAWA, )<br>)<br>)<br>) | |
| Defendants.[1] ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Clarita Anderson, Alma Lyles, Montrell Hardy and Malcolm Thompson have filed a twelve-count first amended complaint alleging that defendants violated their constitutional rights and state tort law during a traffic stop that occurred in December 2006. The case is before the Court on Hardy and Thompson's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on their claim that defendants Sheehan and Yoshikawa violated their Fourth Amendment rights and defendants' motion to bar plaintiffs' expert witness. For the reasons set forth below, the Court denies plaintiffs' motion and grants defendants' motion.

---

[1] Another defendant, Chicago police officer Curtis Miller, was dismissed from this suit in March 2008. (*See* Minute Order of 3/27/08.)

## Motion for Summary Judgment

### Facts[2]

On December 22, 2006 at 12:45 a.m., Montrell Hardy and Malcolm Thompson were passengers in the backseat of a van that was driving on 55th Street in Chicago. (Pls.' LR 56.1(a) Stmt. ¶¶ 4, 6.) Two Chicago police officers, who are not parties to this suit, stopped the van for failing to display a city sticker. (*Id.* ¶ 5.) One of those officers called for assistance because the vehicle was a van with multiple occupants. (*Id.* ¶¶ 7-8.) Defendants Sheehan and Yoshikawa responded to that call. (*Id.* ¶ 11.) They knew assistance had been requested for a traffic stop, but they did not know why. (Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 4.)

When Sheehan and Yoshikawa arrived on the scene, they approached the van with their guns in their hands. (Pls.' LR 56.1(a) Stmt. ¶ 13.) Both officers testified that: it was dark; they did not have a clear view inside the van; they knew there were multiple occupants in the van, but not how many; and they could see the occupants moving around, but could not see their hands or whether they had weapons. (Pls.' Ex. 5, Yoshikawa Dep. at 40-42; Pls.' Ex. 6, Sheehan Dep. at 67, 84, 89-92.) Moreover, Sheehan testified that as he approached the van, he told plaintiff Hardy to put his hands up, but Hardy failed to do so. (Pls.' Ex. 6, Sheehan Dep. at 25, 90, 92-93, 104.)

When Sheehan reached the van, he opened the rear door and told Hardy and Thompson to get out. (Pls.' LR 56.1(a) Stmt. ¶ 16.) Once they were out of the van, the officers handcuffed Hardy and Thompson together, asked plaintiffs for identification and performed a pat down search on each of them. (*Id.* ¶¶ 20, 22-24.) The officers made Hardy and Thompson wait, handcuffed, until a computer check revealed that they had no outstanding warrants. (*Id.* ¶¶ 26-27.)

---

[2]Unless noted otherwise, these facts are undisputed.

Once that happened, the officers removed the handcuffs and told Hardy and Thompson they were free to go. (Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 33; Pls.' Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 33.) The entire traffic stop lasted about fifteen minutes, at least six of which, plaintiffs say, they spent in handcuffs. (Pls.' LR 56.1(a) Stmt. ¶¶ 28, 29.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, Hardy and Thompson allege that Yoshikawa and Sheehan violated their Fourth Amendment rights after the officers ordered them to get out of the van.[3] In plaintiffs' view, the handcuffing and detention was an arrest without probable cause and the pat-down was a search without reasonable suspicion. The officers, of course, disagree.

---

[3]Thompson and Hardy assume, for the purposes of this motion, that the officers' acted lawfully when they instructed plaintiffs to get out of the van. (Pls.' Reply Supp. Mot. Partial Summ. J. at 2); *see Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

The Seventh Circuit has described an arrest as "a profound . . . interference with . . . liberty . . . characterized by [a] highly intrusive or lengthy search or detention" and an investigative stop as a "brief, non-intrusive detention during a frisk for weapons or during preliminary questioning." *United States v. Jaramillo*, 891 F.2d 620, 626 (7th Cir. 1989) (quotations and alterations omitted). The police can constitutionally effect a warrantless arrest only if they have probable cause, that is, if the "facts and circumstances within their knowledge and of which they have reasonably trustworthy information . . . are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Id.* (quotation and alterations omitted). An investigative stop is permissible if the police have "reasonable suspicion" that a crime is occurring, that is, if the police have "specific and articulable facts which, taken together with rational inferences drawn from those facts, reasonably warrant that intrusion." *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997) (quotation omitted). Moreover, during an investigative stop, "an officer [can] conduct a pat-down search if [he] has articulable facts that [lead] him . . . to believe that the individual could be armed or present a threat to others." *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003).

Unfortunately, there is not a bright line between an arrest and a stop. *See United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007) (noting that "police officers do not convert [an investigative] stop into a full custodial arrest just by drawing their weapons" or "handcuffing the subject"). As the Seventh Circuit observed in *United States v. Stewart*:

> The fault line between an investigative detention and an arrest is flexible and highly fact-intensive: Given the endless variations in the facts and circumstances, there is no litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop and becomes an arrest. The crux of our inquiry is whether the nature of the restraint imposed meets the Fourth Amendment's standard of objective reasonableness.

4

388 F.3d 1079, 1084 (7th Cir. 2004) (quotations omitted). With these principles in mind, the Court turns to the record.

Viewed favorably to the officers, as it must be on plaintiffs' motion, the record can support the inference that the encounter outside of the van was an investigative stop and a permissible pat-down search. It is undisputed that Yoshikawa and Sheehan received a call for assistance for a traffic stop but did not know why assistance had been requested. (Pls.' Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 4.) Both officers testified that: it was late at night and dark; they did not have a clear view inside the van; they knew there were multiple occupants in the van, but not how many; and they could see the occupants moving around, but could not see their hands or whether they had weapons. (Pls.' Ex. 5, Yoshikawa Dep. at 40-42; Pls.' Ex. 6, Sheehan Dep. at 67, 84, 89-92.) Moreover, Sheehan testified that as he approached the van, he told Hardy to put his hands up, but Hardy failed to comply. (Pls.' Ex. 6, Sheehan Dep. at 25, 90, 92-93, 104.) If taken as true, those facts could support the inference that at the time of their encounter with Hardy and Thompson, Sheehan and Yoshikawa had a reasonable suspicion that they had committed or were committing a crime and might be armed. Consequently, plaintiffs' motion for summary judgment as to Count I is denied.

### Motion to Bar

On December 7, 2007, plaintiffs informed defendants that they intended to call Dr. Susan E. Pearlson as an expert witness and gave to plaintiffs two reports she had written. (*See* Mot. Bar Pls.' Expert, Ex. 2, Pls.' Rule 26(a)(2) Disclosures.) Defendants say plaintiffs' expert disclosure came too late and that Dr. Pearlson's testimony should be barred.

5

The Court agrees. When the parties filed their joint initial status report on May 9, 2007, both said they did "not anticipate any expert witnesses in the case." (*See* Mot. Bar Pls.' Expert, Ex. 1, Joint Initial Status Report at 2.) At a hearing before the Court on May 18, 2007, plaintiffs' counsel said nothing about experts, and defense counsel said she was still investigating whether one would be necessary. (*See* Pls.' Mem. Resp. Opp'n Defs.' Mot. Bar, Ex. 2, Hr'g Tr. of 5/18/07 at 3-4.) Given these representations, the Court adopted the parties' proposed schedule, which did not provide for expert discovery, ordered fact discovery to close on December 14, 2007 and dispositive motions to be filed by January 15, 2008. (*See* Minute Order of 5/18/07.) However, given defense counsel's ambivalence about experts, the Court said, should she determine that one would be necessary, she should "come on in, and . . . we'll alter the discovery schedule to accommodate experts." (*See* Pls.' Mem. Resp. Opp'n Defs.' Mot. Bar, Ex. 2, Hr'g Tr. of 5/18/07 at 4.)

Between May 18, 2007 and December 6, 2007, neither party informed the Court that they would use an expert witness. On December 7, 2007, for the first time, plaintiffs revealed their intention to call an expert, Dr. Susan E. Pearlson. (*See* Defs.' Mot. Bar, Ex. 2, Pls.' Rule 26(a)(2) Disclosures.) Plaintiffs say their disclosure is timely because the Court had not set an expert discovery cut off date and it was made at least ninety days before trial, as directed by Rule 26(a)(2)(C)(i).

Even if plaintiffs' disclosure comports with the letter of Rule 26, it eviscerates the Rule's spirit. From the inception of this case until December 6, 2007, plaintiffs maintained that they would not be calling an expert witness. Then on December 7, 2007, one week before discovery closed and without having given the Court or defendants any prior notice, they disclosed Dr. Pearlson. (*See* Defs.' Mot. Bar, Ex. 2, Pls.' Rule 26(a)(2) Disclosures.) Worse, the reports that accompanied

6

plaintiffs' disclosure are dated October 25, 2007 and November 14, 2007, respectively, yet plaintiffs do not explain why they waited until December to produce them. (*See id.*, Exs. 3 & 4, Pearlson Reports.)

Moreover, allowing plaintiffs to make this belated disclosure will unduly delay the resolution of this otherwise trial-ready case. The Court will have to reopen discovery so defendants can depose Dr. Pearlson and, if they choose, obtain a rebuttal expert whom plaintiffs, no doubt, would then want to depose. Given plaintiffs' inexplicable decision to obtain an expert without alerting the Court or defendants and their subsequent failure to disclose her reports immediately after they were completed, the Court exercises its discretion to bar Dr. Pearlson from testifying.

## Conclusion

For the reasons set forth above, the Court denies Hardy and Thompson's motion for summary judgment on Count I of the first amended complaint [doc. no. 54] and grants defendants' motion to bar plaintiffs' expert witness [doc. no. 52]. Because this was the only dispositive motion filed within the time allotted for doing so, the parties should be prepared, at the next status hearing, to set a trial date.

**SO ORDERED.**                                              ENTER: 5/29/08

HON. RONALD A. GUZMAN
United States District Judge